United States District Court
Southern District of Texas
**ENTERED**
February 14, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| DANIEL R. BOWEN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-cv-00382 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL | § | |
| BRANCH, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Daniel R. Bowen ("Bowen") worked as a police officer for the University of Texas Medical Branch at Galveston ("UTMB") from June 2007 until his termination on July 10, 2018. In this lawsuit, Bowen claims that UTMB discriminated against him on the basis of his sex (male) and subjected him to retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

There are a number of motions pending before me, including summary judgment motions filed by both sides. For the reasons discussed below, I recommend that summary judgment be **GRANTED** in favor of UTMB and this case be **DISMISSED**.

## BACKGROUND

In March 2018, Lieutenant Ryan Erwin ("Erwin") initiated a complaint about the conduct of members of UTMB's police department, including former UTMB Assistant Chief Anthony Curry ("Assistant Chief Curry"). Based on that complaint, Interim UTMB Police Chief Ruben Puente ("Interim Chief Puente") ordered an investigation be conducted by Senior Inspector Angelia Lemmonds ("Lemmonds") and Interim Chief of Staff Stephanie Schoenborn ("Schoenborn").

As part of the investigation into Assistant Chief Curry, Lemmonds and Schoenborn interviewed numerous members of UTMB's police department. In

those interviews, UTMB police department "personnel consistently indicated that Bowen was very close to" Assistant Chief Curry, "that Curry was sharing confidential internal affairs information with Bowen that Bowen should not have been privy to," and "that Bowen would pass that information on to his fellow UTMB" police officers. Dkt. 34-2 at 2; Dkt. 34-3 at 2.

In light of the information gleaned from those interviews, Lemmonds and Schoenborn decided to question Bowen. The interview took place on March 22, 2018 ("First Interview"). At the outset of the First Interview, which was recorded and later transcribed, Bowen was informed that UT System Police Policy #212 requires UTMB employees to "be truthful in all official verbal and written communications" and "agency investigations." Dkt. 34-2 at 8. Bowen was also read and then signed a Garrity Warning.[1] The Garrity Warning provided, in part, as follows:

> You are required to respond to all questions asked of you in this administrative investigation. Further, you are required to assist investigators with any information they should request. If you fail or refuse to forthrightly answer any and all questions asked, you may be subject to disciplinary action up to and including termination from employment with the University of Texas System Police.
>
> &ast;&ast;&ast;
>
> You are further ordered not to discuss this internal investigation with anyone other than your chain of command or attorney, including but not limited to witnesses or prospective witnesses. A violation of this order will be considered an act of insubordination, which could result in disciplinary action against you up to and including termination from employment with the University of Texas System Police.

Dkt. 34-2 at 201.

---

[1] A "Garrity Warning," named for *Garrity v. New Jersey*, is a warning issued by law enforcement officers to an officer who is being questioned regarding actions in a criminal prosecution. *See* 385 U.S. 493 (1967). "Upon invoking the *Garrity* rule, an officer invokes his right against self-incrimination and any statement made by the officer may only be used for departmental investigation purposes and not for criminal prosecution purposes." *Troxell v. City of S. Houston*, No. CIV.A. H-12-01835, 2013 WL 3965302, at *2 n.14 (S.D. Tex. Aug. 1, 2013).

In the First Interview, Bowen vehemently denied that Curry shared any confidential internal affairs information with him. *See id*. at 46 ("Everybody thinks [Assistant Chief Curry] told me [confidential information]. He didn't tell me anything."); *Id*. at 48 ("Would he tell me about things when he was the assistant chief about inner workings of the inner workings of the department? No.").

The First Interview concluded at 6:41 p.m. Less than 30 minutes later, at 7:07 p.m., Bowen and UTMB police officer Dustin Oliphant ("Oliphant") left the UTMB police department in a patrol car. Oliphant had been interviewed earlier that day in connection with the investigation into Assistant Chief Curry. In his interview, Oliphant had disclosed to investigators two internal affairs cases in which Assistant Chief Curry had improperly shared confidential information with him.

When Bowen and Oliphant returned to the police department at 7:34 p.m., Bowen immediately contacted Lemmonds and Schoenborn to provide them with additional information relevant to the investigation. During this second interview ("Second Interview"), Bowen completely changed his story. He recanted his original statement that Assistant Chief Curry did not provide any confidential internal affairs information to him, telling investigators that he remembered two specific internal affairs cases in which Assistant Chief Curry provided confidential information to him. The two cases Bowen described to investigators were the same as those identified by Oliphant during his interview.

As Lemmonds and Schoenborn both explained in declarations submitted in support of UTMB's motion for summary judgment:

> The information Bowen provided us during the Second Interview revealed that Bowen did in fact receive confidential internal affairs information from Curry, which directly contradicted the information he gave us during his First Interview and showed that Bowen was not truthful during the First Interview. Moreover, the fact that the additional information Bowen provided to us during the Second Interview were the same two cases in the identical order as those identified by Oliphant raised concern that Bowen and Oliphant

discussed the details of their interviews with each other, in violation
of UT System and UTMB policies and the Garrity Warning.

Dkt. 34-2 at 3; Dkt. 34-3 at 3.

After Lemmonds and Schoenborn informed Interim Chief Puente that they
had reason to believe Bowen and Oliphant had discussed the investigation into
Assistant Chief Curry and the content of their interviews with each other in
violation of UTMB policy and the Garrity Warning, Interim Chief Puente filed
personnel complaints against both Bowen and Oliphant on March 28, 2018.
Interim Chief Puente placed Bowen on administrative leave the following day.
Oliphant submitted his resignation within a month. Meanwhile, Bowen insisted
that he had done nothing wrong and demanded that he be allowed to take a
polygraph examination to prove his innocence. The results of the polygraph
examination, which happened on April 3, 2018, indicated that Bowen was
"untruthful."[2]

On July 10, 2018, Puente notified Bowen that his employment with UTMB
had been terminated because he violated UT System Police Policy[3] and the Garrity
Warning. The termination letter stated: "Acts committed by you on March 22,
2018, demonstrate your failure to be governed by the ordinary and reasonable
rules of good conduct and behavior, and tend to bring reproach, discredit, and
embarrassment to the police profession, [the UTMB Police] Department, and the
University [of Texas]." Dkt. 34-4 at 31.

---

[2] At the polygraph examination, Bowen was asked two questions: (1) "Did you discuss the details
of your interview with Officer Oliphant?"; and (2) "Did you discuss this case with Officer Oliphant
after your interview?" Dkt. 34-2 at 234. He answered "no" to each question.

[3] UTMB claims that Bowen violated UT System Police Policy #212, Section IV, E.4,
Insubordination ("Employees shall promptly obey all lawful orders and directions given by
supervisors and radio dispatchers. The failure or deliberate refusal of employees to obey such
orders shall be deemed insubordination and is prohibited.") and UT System Police Policy #212,
Section IV, F.6, Truthfulness ("Employees shall be truthful in all official verbal and written
communications and reports. Employees will be truthful in any court related testimony or agency
investigations."). *See* Dkt. 34-2 at 204.

On November 18, 2019, Bowen filed this lawsuit against UTMB, asserting claims for retaliation and hostile work environment under Title VII. Bowen alleges he "was subjected to unwelcomed sexual harassment and/or hostility by Lieutenant Ryan Erwin," and that, "[s]hortly after reporting that he was the victim of [Erwin's] sexual harassment," he was "suspended based upon false allegations of a Garrity violation, [sic] and ultimately terminated from his employment" with UTMB. Dkt. 11 at 4. In his deposition testimony, Bowen specifically complains that Erwin made repeated offensive and inappropriate comments, such as calling him "a queer," "butt budd[y]," and otherwise suggesting that he was in a homosexual relationship with Assistant Chief Curry. Dkt. 49-9 at 6.

UTMB has filed a motion for summary judgment, asking that the entire case be dismissed as a matter of law. *See* Dkt. 34. Bowen has filed two separate motions for summary judgment. In his initial motion for summary judgment, Bowen contends that he is entitled to judgment as a matter of law on his hostile-work-environment and retaliation claims. *See* Dkt. 35. Bowen's supplemental motion for summary judgment argues that UTMB's eight affirmative defenses fail as a legal matter. *See* Dkt. 50.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *See Mary v. QEP Energy Co.*, --- F.4th ---, 2022 WL 154483, at *2 (5th Cir. Jan. 18, 2022).

The movant "bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quotation omitted). To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). *See also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

In ruling on a motion for summary judgment, I must construe all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *See Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Before I analyze the various motions for summary judgment before me, I need to address some objections made by both Bowen and UTMB to the other side's evidentiary submissions.

### A.   BOWEN'S OBJECTIONS TO UTMB'S SUMMARY JUDGMENT EVIDENCE

In support of its motion for summary judgment, UTMB has offered declarations of Erwin, Interim Chief Puente, Lemmonds, and Schoenborn. Bowen objects to these declarations on the grounds that they contain misleading, speculative, and false statements. *See* Dkt. 49 at 3–7.

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). *See also* FED R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Declarations "setting forth ultimate or conclusory facts and conclusions of law are insufficient to either

support or defeat a motion for summary judgment." *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 220 (5th Cir. 2015) (quotation omitted).

Although Bowen takes issue with the veracity of the four declarations, the statements in the declarations constitute competent summary judgment evidence. Each declaration is sworn under penalty of perjury and specifically provides that the witness has personal knowledge of those facts contained within the declarations. It is also clear from reading the declarations that the witnesses' testimony is grounded in personal observation and experience. Simply claiming that the statements in all four declarations are misleading or false is not a sufficient basis to exclude the testimony in its entirety. *See Morgan v. Denton Indep. Sch. Dist.*, No. 4:12–CV–290, 2013 WL 4418447, at *4 (E.D. Tex. Aug. 15, 2013) ("A statement that portions of [an] affidavit are 'false' is not a proper objection."); *Brown v. Armendariz*, No. CIVA 307CV-2154-O BH, 2009 WL 812149, at *4 (N.D. Tex. Mar. 26, 2009) ("Plaintiff's disagreement with [declarant]'s statements is not a basis for exclusion."). Accordingly, I overrule Bowen's objections.

**B.   UTMB'S OBJECTIONS TO BOWEN'S SUMMARY JUDGMENT EVIDENCE**

Turning to UTMB's objections to Bowen's summary judgment evidence, UTMB first asks me to strike the four exhibits referenced in Bowen's reply in support of his motion for summary judgment. *See* Dkt. 60. The four exhibits include a declaration from Assistant Chief Curry,[4] a declaration from former UTMB police officer Mike Riedel ("Riedel"), an article about the effects of workplace bullying, and a copy of Erwin's LinkedIn resume. UTMB argues that: (1) the four exhibits are untimely because Bowen filed them more than 40 days after he submitted his motion for summary judgment; (2) the article about the effects of workplace bullying and Erwin's LinkedIn resume have not been properly authenticated; and (3) Riedel's declaration must not be considered because Bowen

---

[4] Bowen's reply brief did not include Assistant Chief Curry's declaration as an exhibit. Instead, Bowen indicated that he expected to obtain and file a declaration from Assistant Chief Curry by May 7, 2021. No such declaration was ever submitted as part of the summary judgment record.

failed to disclose Riedel as a person with knowledge of relevant facts. Although UTMB's objections have considerable merit, I deny UTMB's motion to strike the referenced exhibits as moot because "this evidence does not affect the disposition of the summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co. LLC*, No. 4:20-CV-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022). *See also Banks v. Bell Helicopter Textron, Inc.*, No. 4:10-CV-653-Y, 2011 WL 13291576, at *4 (N.D. Tex. Nov. 4, 2011) ("Bell also raises objections to Banks's summary-judgment evidence. But because Bell is entitled to judgment as a matter of law even considering the objected-to evidence, the Court overrules Bell's objections as moot."); *Jones v. United Parcel Serv., Inc.*, No. 3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

Separately, UTMB requests that I strike five exhibits to Bowen's Response to Defendant UTMB's Motion for Summary Judgment—Exhibits A, D, E, F, and J. *See* Dkt. 53 at 1–2. UTMB claims that these exhibits have not been properly authenticated and, therefore, are inadmissible. UTMB also objects to Exhibit J (examples of Bowen's commendation for excellent police work) because it purportedly was not produced during the discovery process.

For the most part, these objections are frivolous. There are no authentication issues with Exhibits A, D, or F. Exhibit A consists of portions of Bowen's First Interview, which UTMB has attached to its motion for summary judgment; Exhibit D is the complete deposition of Ruben Puente; and Exhibit F includes portions of Bowen's deposition, which are also included as an exhibit to UTMB's motion for summary judgment. Further, although Exhibit J is not properly authenticated, Bowen need not authenticate evidence at the summary judgment stage if it can be authenticated at trial. *See Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").

8

Exhibit E is the only exhibit that concerns me. It purports to be a transcript of Schoenborn's deposition, but it is not in the traditional format of a deposition transcript. Instead, it looks as if someone has attempted to transcribe a tape recording of Schoenborn's testimony using Microsoft Word. Rule 30(f)(1) requires the court reporter to "certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony." FED. R. CIV. P. 30(f)(1). 'The certificate must accompany the record of the deposition." *Id.* Because Exhibit E does not contain a court reporter's certification, I sustain UTMB's objection to Exhibit E and will not consider it in deciding the competing summary judgment motions.

### BOWEN'S FAILURE TO PROPERLY CITE THE RECORD

There is one more issue I need to address before diving headfirst into the merits of the competing summary judgment motions. To my chagrin and dismay, Bowen routinely does not cite to *specific* portions of the summary judgment record purportedly supporting his position. Instead, throughout his summary judgment papers, Bowen makes statements while identifying an entire exhibit as the source. Let me provide some concrete examples:

- "Erwin and others referred to [Assistant Chief] Curry and Bowen as cancers in the department and toxic. ***See Plaintiff's Exhibit D.***" Dkt. 49 at 27. Plaintiff's Exhibit D is a 135-page deposition transcript.

- "Erwin asked [Interim Chief Puente] to [sic] in furtherance of his dislike for [Assistant Chief] Curry and anyone friendly to [Assistant Chief] Curry—enter Plaintiff Bowen. ***See Plaintiff's Exhibits B, C, and F.***" *Id.* Exhibit B is a 64-page deposition transcript, Exhibit C is a 32-page deposition transcript, and Exhibit F is a 28-page deposition transcript. Altogether, these three exhibits consist of a total of 124 pages.

- "Schoenborn testified she recalled interviewing dozens of witnesses during the March 2018 investigation. ***See Plaintiff's Exhibit E.***" *Id.* Plaintiff's Exhibit E is a 104-page document.

By refusing to identify specific portions of the summary judgment record, Bowen asks me to spend an inordinate amount of time searching aimlessly through the record to find support for his statements or to simply guess at what he means. And many times, I am unable to find any corroboration for his assertion in the summary judgment record. For example, Bowen writes, "Lemmons state[d] that Bowen was specifically mentioned in the [personnel complaint form] that initiated the complaint against [Assistant Chief] Curry" and cites to an eight-page excerpt from the First Interview. *Id.* at 26. The referenced document says no such thing. Furthermore, Bowen makes many statements in his briefing without providing any evidentiary support whatsoever for his claims. *See, e.g., id.* at 27 ("It was no secret that Erwin did not like [Assistant Chief] Curry as his supervisor and often challenged directives given to him by [Assistant Chief] Curry.").

It is well-settled that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 408 (5th Cir. 2011) (quotation omitted). *See also United States v. Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation omitted)). "If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). *See also Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (asserting that parties should include specific, not general, citations to summary judgment evidence). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).

At the end of the day, it is the nonmovant's burden to present competent summary judgment evidence that creates a genuine issue of material fact. Following the Fifth Circuit's clear guidance, I will not consider any factual

allegations unsupported by references to specific evidence in the summary judgment record.

## COMPETING MOTIONS FOR SUMMARY JUDGMENT ON BOWEN'S CLAIMS FOR AFFIRMATIVE RELIEF

UTMB and Bowen have both moved for summary judgment on Bowen's claims for affirmative relief under Title VII. UTMB asks that Bowen's claims be dismissed as a matter of law. *See* Dkt. 34. Meanwhile, Bowen asks that judgment be entered in his favor on liability.[5] *See* Dkt. 35. Since the issues are intertwined, I will address the dueling motions for summary judgment simultaneously.[6]

### A.   TITLE VII RETALIATION

Bowen alleges that he was fired in retaliation for reporting sexual harassment by Erwin.

### 1.   *The McDonell Douglas Burden-Shifting Framework*

Title VII makes it unlawful for an employer to retaliate against an employee "because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)).

When analyzing a Title VII retaliation claim, I must utilize the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) ("retaliation claims under Title VII are subject to the *McDonnell Douglas*

---

[5] I note that it is "highly unusual" for a plaintiff in a hostile-work-environment/retaliation case to move for summary judgment. *Day v. City of Baraboo*, No. 06-C-188-C, 2007 WL 5633174, at *6 (W.D. Wis. Jan. 31, 2007). "One could read hundreds if not thousands of decisions in these cases without coming across one in which a plaintiff moved for summary judgment, much less prevailed." *Id.*

[6] Bowen also argues that summary judgment should be entered in his favor because UTMB failed to file an answer, thus admitting all facts as pled in Plaintiff's First Amended Complaint. *See* Dkt. 35 at 6–8. This argument is moot because I granted UTMB's request to file an answer out of time, *see* Dkt. 39, and UTMB subsequently filed an answer. *See* Dkt. 40.

burden-shifting framework"). The *McDonnell Douglas* analysis proceeds in three distinct steps.

First, a plaintiff must establish a *prima facie* case of retaliation. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). To do so, a plaintiff must establish that: "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015).

Second, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment decision. *See Brown*, 969 F.3d at 577. The employer's burden is low. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257–58 (1981). "This burden is one of production, not persuasion, and it involves no credibility assessment." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quotation omitted). "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a [non-retaliatory] reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Third, if the employer articulates a legitimate, non-retaliatory reason for its employment decision, the burden shifts back to the plaintiff to show that the reason proffered by the employer is merely a pretext for retaliation. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). "Under this framework, the employee's ultimate burden is to prove that the adverse employment action would not have occurred but for the protected conduct." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, --- F.4th ---, 2022 WL 92810, at *7 (5th Cir. Jan. 10, 2022). "What's more, the plaintiff must produce substantial evidence of pretext." *Jones*, 8 F.4th at 369 (quotation omitted)). A plaintiff may establish pretext "by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton*

12

*v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quotation omitted). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown*, 969 F.3d at 578.

### 2. *Bowen Cannot Establish That UTMB's Legitimate, Non-Retaliatory Reason is a Mere Pretext for Unlawful Retaliation*

For purposes of the pending summary judgment motions, I will assume that Bowen can make out a *prima facie* case of retaliation under Title VII. Applying the *McDonnell Douglas* test, the burden shifts to UTMB to articulate a legitimate, non-retaliatory reason for terminating Bowen's employment.

UTMB argues that it terminated Bowen because he violated UTMB policy by improperly disclosing confidential information and being untruthful to investigators. There is no question that a violation of company policy is considered a legitimate, non-retaliatory reason for termination. *See Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) (violation of company policy may be a legitimate and non-discriminatory reason for termination of employment); *Ng-A-Mann v. Sears, Roebuck & Co.*, 627 F. App'x 339, 341 (5th Cir. 2015) (same); *Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 509 (W.D. Tex. 2016) ("An employer produces a legitimate, non-retaliatory reason . . . when it articulates that an employee was terminated for violation of a company policy."). Similarly, it is beyond dispute that an employee's dishonesty during an investigation is a legitimate, non-retaliatory reason for termination. *See Horton v. Entergy Servs., Inc.*, No. 3:09-CV-66 HTW-LRA, 2012 WL 1098470, at *7–8 (S.D. Miss. Mar. 31, 2012) (employee's dishonesty during an investigation is a legitimate, non-discriminatory reason to terminate the employee); *Mayberry v. Mundy Cont. Maint., Inc.*, CIV.A. H-03-5221, 2005 WL 1965956, at *6 (S.D. Tex. Aug. 16, 2005) (an employer's good-faith belief that an employee violated company policy by providing untruthful statements during an investigation constitutes a legitimate, non-discriminatory reason for termination).

To survive summary judgment under the *McDonnell Douglas* framework once UTMB provides a legitimate, non-discriminatory reason for the termination, Bowen must "offer sufficient evidence to create a genuine issue of material fact . . . that [UTMB's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quotation omitted). I have carefully reviewed the briefing submitted by Bowen on the pretext issue, and it is hard to follow, often meandering into obscure waters. Even viewing the evidence in the light most favorable to Bowen, he fails to carry his stout burden.

First, Bowen contends that UTMB's proffered reasons for termination are false and unworthy of credence because there are "two opposite explanations as to who actually initiated the complaint into" Assistant Chief Curry. Dkt. 49 at 26. According to Bowen, UTMB has taken the position that "both Puente and Erwin independently initiated the Curry complaint." *Id.* This is flat-out wrong. The summary judgment record is clear: UTMB received a complaint from Erwin involving members of the UTMB police department, including Assistant Chief Curry. *See* Dkt. 34-4 at 2. Upon learning about this complaint, Interim Chief Puente asked two individuals, Lemmonds and Schoenborn, to spearhead an investigation into the allegations against Assistant Chief Curry. *See id.* There is nothing suspicious or shady about this series of events—certainly nothing to create a genuine issue of fact as to whether UTMB's proffered reason for termination is false or unworthy of credence. More to the point, even if there were two conflicting versions as to who initiated the investigation into Assistant Chief Curry, I am at a loss to comprehend how that casts doubt on the reason UTMB offers for terminating Bowen: his failure to follow UTMB policy and abide by the Garrity Warning.

Second, Bowen makes various unsubstantiated assertions that Erwin had a personal vendetta against Curry. To this end, Bowen claims that Erwin (1) "did not like [Assistant Chief] Curry as his supervisor and often challenged directives given to him by [Assistant Chief] Curry;" (2) referred to Assistant Chief Curry as a

"cancer[] in the department and toxic," and (3) "was able to get [Interim Chief] Puente to revive his dead complaint against [Assistant Chief] Curry and negatively impact the officers Erwin, [sic] believed to be associated with [Assistant Chief] Curry." Dkt. 49 at 27. Putting aside the fact that the summary judgment record is devoid of any evidence supporting these heavy allegations, these claims, even if true, do not impact the pretext analysis one iota. Erwin's alleged hatred of Assistant Chief Curry has nothing to do with the reason UTMB has offered for terminating Bowen's employment—his failure to tell the truth during an investigative interview and his failure to follow UTMB policies and the Garrity Warning. Accordingly, any evidence demonstrating that Erwin disliked Assistant Chief Curry does not satisfy Bowen's heavy burden to "produce evidence permitting the jury to disbelieve that [UTMB's] proffered reason [for Bowen's termination] was its true motivation." *Laxton*, 333 F.3d at 579.

Third, Bowen claims that I should disbelieve UTMB's proffered reason for his termination because it is allegedly fishy that only he and Oliphant—out of the more than two dozen police officers interviewed as part of the investigation into Assistant Chief Curry—received Garrity Warnings. From reviewing the summary judgment evidence, I can tell that Garrity Warnings were read to Bowen and Oliphant, but I have no idea whether they were the only officers who received Garrity Warnings.[7] Even if true, it is hardly surprising that investigators issued Bowen a Garrity Warning since each and every person interviewed as part of the investigation "mentioned [Bowen] as having information that [Assistant Chief] Curry gave [him] directly." Dkt. 34-2 at 46. Moreover, Bowen and Oliphant should have been expected to receive Garrity Warnings since they were "two key players . . . because [they knew] confidential information" that was directly given to them by Assistant Chief Curry. *Id.* at 133–34. All that said, even if UTMB investigators

---

[7] Bowen does not point to any place in the summary judgment record that would confirm he and Oliphant were the only individuals issued a Garrity Warning.

15

had targeted only two individuals (Bowen and Oliphant) for Garrity Warnings, I am hard-pressed to understand how that constitutes substantial evidence that UTMB's proffered reason for firing Bowen was unworthy of credence.

Fourth, Bowen maintains that he "can demonstrate evidence of pretext by showing that [UTMB] failed to follow its own policies and abandoned proper investigative procedures." Dkt. 49 at 29. In making this claim, Bowen argues that Erwin was improperly tasked with leading the investigation into Bowen's complaints of sexual harassment because Erwin was the alleged perpetrator of the harassment. It is true that Interim Chief Puente asked Erwin to conduct the investigation into Bowen's complaints of sexual harassment, but there is no evidence that Interim Chief Puente had any idea at the time of his request that Erwin was the alleged harasser. Indeed, the initial complaint of unlawful discrimination and retaliation Bowen's lawyer sent to UTMB did not mention Erwin by name, nor did the accompanying statement provided by Bowen. *See* Dkt. 34-6 at 4–7. And although Bowen mentioned to Lemmonds and Schoenborn during the First Interview that Erwin had directed offensive comments his way, Interim Chief Puente is emphatic that Lemmonds and Schoenborn did not "discuss or mention to [him] that Bowen made complaints of sexual harassment, hostile work environment, or inappropriate comments by UTMB [police department] officers." Dkt. 34-4 at 3.

Even if I agree that Erwin should not have been assigned to lead the investigation into Bowen's complaints of sexual harassment, I still do not believe Bowen has presented substantial evidence supporting an inference of pretext. In the end, Bowen has failed to demonstrate UTMB's contention that he was terminated for failing to abide by the Garrity Warning and UTMB policy relating to truthfulness and insubordination is "not the real reason for the adverse

employment action." *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021) (quotation omitted).[8]

Finally, Bowen suggests that UTMB did not possess sufficient evidence to conclude that he violated the Garrity Warning by discussing the ongoing investigation with Oliphant or lied to UTMB investigators about his dealings with Assistant Chief Curry. In my view, this claim is spurious. It is undisputed that Bowen told investigators in the First Interview that he did not receive confidential internal affairs information and then changed his tune just a few hours later after he had left UTMB premises with Oliphant. The information Bowen provided in the Second Interview was the same information Oliphant had provided earlier in the day. This, understandably, raised a concern that Bowen and Oliphant had discussed the details of their interviews with each other in violation of the Garrity Warning and UTMB policies. Ultimately, it is immaterial whether Bowen actually violated company policy or truly was dishonest so long as Interim Chief Puente, the UTMB official who made the decision to terminate Bowen, actually believed that Bowen violated company policy or was untruthful. As one district court noted:

> In pretext cases, it is not enough that the company was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true. A factual dispute over the employee's innocence of the allegations against him is not enough to survive summary judgment; the plaintiff must put forward evidence sufficient to create a factual dispute as to whether or not the company subjectively believed that the allegations were true. The plaintiff has the ultimate burden of showing a genuine material factual dispute over whether the defendant discriminated against him on the basis of the plaintiff's membership in the protected class.

---

[8] In passing, Bowen also asserts that he can establish pretext by pointing to UTMB's purported stonewalling throughout the discovery process. *See* Dkt. 55 at 8–9. I do not find this argument convincing. To start, I have presided over this case for a long time and have never found UTMB to have participated in obstructionist discovery tactics. Additionally, any alleged discovery abuse does not, in my mind, cast doubt on the proffered reasons for Bowen's termination.

*Lucas v. T-Mobile USA, Inc.*, 217 F.Supp.3d 951, 957 (S.D. Tex. 2016) (citation omitted). *See also Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."); *Little v. Republic Refin. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1992) ("Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence.").

On that score, the evidence is undisputed. Assistant Chief Puente has sworn, under oath, that he fired Bowen because he violated UTMB policy and the Garrity Warning. *See* Dkt. 34-4 at 3 ("My decision to terminate Bowen and his dishonorable discharge had nothing to do with his allegations of sexual harassment, inappropriate comments, or hostile work environment."). In response, Bowen has presented no evidence that creates a factual dispute as to whether or not Interim Chief Puente, acting on behalf of UTMB, subjectively believed the allegations against Bowen were true. As a result, Bowen has failed to show that UTMB's asserted reasons for his termination were pretextual. Summary judgment is, thus, appropriate on Bowen's Title VII retaliation claim.

## B.   HOSTILE WORK ENVIRONMENT

I now turn to Bowen's cause of action for a hostile work environment. In short, Bowen contends that he "was often the brunt of demeaning and crude jokes of a sexual, homophobic and degrading nature." Dkt. 34-7 at 5. According to Bowen, Erwin "spread rumors regarding a homosexual relationship between [Bowen] and [Assistant Chief] Curry," *id.* at 3, and routinely made offensive and inappropriate comments. The crude jokes and statements attributed to Erwin allegedly included: "Where is your boyfriend at?"; "How's your boyfriend?"; being called "queer," Assistant Chief Curry's "boyfriend," and "butt buddies"; "Who's on top?"; "Do you swallow?"; when referring to washing Assistant Chief Curry's balls on a golf course, "Did you wash his white balls this weekend?"; being asked "what

positions we used"; "Are you consoling him at night?"; "How does his cock taste?"; and "Are you all fucking?" Dkt. 49-9 at 6; Dkt. 34-2 at 75–76; Dkt. 34-6 at 7. These remarks, Bowen argues, led to a great deal of embarrassment and humiliation.

In determining whether these allegations are enough to survive summary judgment, it is helpful to briefly summarize the state of the law governing hostile work environment claims under Title VII. A plaintiff asserting a hostile-work-environment claim must show that: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999).[9]

UTMB concedes, as it must, that the first element for a hostile-work-environment claim is satisfied since Bowen is a member of a protected class (male). But the common ground ends there. UTMB avers that Bowen has failed to produce evidence in support of elements two through five.[10]

---

[9] Technically, a district court handling a same-sex sexual-harassment case, like the instant matter, must conduct a two-step inquiry. *See E.E.O.C. v. Boh Brothers Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). "First, [the district court must] consider whether the alleged conduct was sex discrimination and, second, [the district court must] evaluate whether the conduct meets the standard for a . . . hostile-work-environment claim." *Id.*

To satisfy the first step, a plaintiff may pursue one of three evidentiary paths. *See id.* at 455. A plaintiff may: (1) show that the harasser was homosexual and motivated by sexual desire; (2) show that the harassment was framed "in such sex-specific and derogatory terms as to make it clear that the harasser was motivated by general hostility to the presence" of a particular gender in the workplace; or (3) "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* (cleaned up).

The parties do not address the first step of a same-sex sexual-harassment case, and there is no summary judgment evidence suggesting that Bowen can meet his burden at this first step. However, even if I give Bowen the benefit of the doubt and assume he can establish that the alleged conduct at issue constitutes sex discrimination, his claim still fails because he cannot meet the standard for a hostile-work-environment claim.

[10] There is a dispute as to whether Erwin, the alleged harasser, is Bowen's supervisor or merely a co-worker. When the alleged harasser is a supervisor, the employee need only "satisfy the first four elements of the [hostile-work-environment] test." *Watts v. Kroger Co.*, 170 F.3d 505, 509

I want to focus on the fourth element—that is, whether the harassment affected a term, condition, or privilege of employment. To affect a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of [Bowen's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986) (quotation omitted). The Fifth Circuit has repeatedly held that the legal standard for workplace harassment is "high." *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 n.33 (5th Cir. 2021); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). Title VII is not a "general civility code," therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up). *See also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.") (cleaned up). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

"For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Id.* The objective inquiry requires a district court to take "all of the circumstances" into account, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

(5th Cir. 1999). Because I ultimately conclude that Bowen is unable to satisfy the fourth element of a hostile-work-environment claim, I need not determine whether Erwin is a supervisor.

performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quotation omitted).[11]

Viewing the summary judgment evidence in the light most favorable to Bowen and drawing all reasonable inferences in his favor, I conclude that Bowen has failed to present a genuine issue of material fact that Erwin's conduct affected a "term, condition, or privilege" of his employment.[12] The comments allegedly directed at Bowen were unquestionably offensive, boorish, and unwelcome. That does not, however, mean that the so-called "locker room" talk at issue passes the high bar required to establish an actionable hostile-work-environment claim. Remember, "[t]he alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004). Notably, there are no allegations in this case of unwelcome touching, physically threatening behavior, or propositioning for sexual favors. Bowen also does not allege that Erwin's "conduct was motivated by sexual desire, nor does [he] contend that it was otherwise sexual in nature or a display of explicit sexual animus." *Newbury v. City of Windcrest*, 991 F.3d 672, 676 (5th Cir. 2021).

To survive summary judgment, the harassment must be "so severe and pervasive that it destroy[ed] [Bowen's] opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874 (quotation omitted). There is a glaring absence of summary judgment evidence indicating that the alleged comments affected

---

[11] "The *McDonnell Douglas* burden-shifting analysis—which allows the [employer] to proffer a legitimate, nondiscriminatory reason behind its actions—does not apply to [a hostile-work-environment] claim because the [employer] cannot offer a legitimate reason for creating such an environment." *Okeke v. Adm'r s of Tulane Educ. Fund*, No. CV 20-450, 2021 WL 2042213, at *10 n.125 (E.D. La. May 21, 2021). *See also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017) ("[T]he burden-shifting framework is inapplicable [to a hostile-work-environment claim] because . . . there can be no legitimate justification for a hostile work environment."); *EEOC v. Bass Pro Outdoor World, LLC*, 35 F.Supp.3d 836, 857 (S.D. Tex. July 30, 2014) ("[H]ostile work environment claims are not proven using *McDonnell Douglas* or any other burden-shifting scheme.").

[12] To be clear, Erwin strongly denies ever making any "sexual, homophobic, or inappropriate comments of any kind towards Bowen." Dkt. 34-5 at 1.

Bowen's ability to perform his job duties. On the contrary, Bowen adamantly declares that the crude jokes and loutish statements had absolutely no impact on his work performance. *See* Dkt. 34-1 at 21 ("Q. Okay. Did the comments affect your work performance? A. No. I always every year met and exceeded expectations of a—the police officer position."). And, perhaps most telling, Bowen's own words clearly indicate that he did not perceive Erwin's comments as abusive and severe. Dkt. 34-2 at 75 ("I laugh it off. . . . Jokes. It's jokes."); *id.* ("I'm a police officer, I'm 26 years into this shit. It rolls off my back. I know what's true, what's not true."); *id.* ("It used to [make me upset], but I think the quality of my work outweighed anything else and people knew what I was doing."). Although Bowen served as a UTMB police officer for roughly 11 years, it is far from clear after reviewing the summary judgment record when the alleged harassment began and how frequently Erwin made the offensive comments.

Looking at the Fifth Circuit's jurisprudence in the area of hostile-work-environment claims, there is no doubt that the crude and vulgar comments allegedly directed Bowen's way are not sufficiently severe or pervasive enough to create a hostile work environment. *See Hockman*, 407 F.3d at 328 (finding remarks about a co-worker's body and requests to be alone with plaintiff were "offhand comments that [were] boorish and offensive, but not severe"); *Shepherd*, 168 F.3d at 874 (physical contact with plaintiff's arms and shoulders and offensive comments over the course of years were not sufficient to create hostile or abusive work environment); *Esparza v. Telerx Mktg., Inc.*, No. EP-04-CA-0241-FM, 2005 WL 1514046, at *2 (W.D. Tex. June 21, 2005), *aff'd* 174 F. App'x 806 (5th Cir. 2006) (same-sex harassment involving physical contact with plaintiff's breasts, invitation to co-worker's apartment, and comments about getting "to know [plaintiff] and question[ing] why [plaintiff] did not fall for [co-worker's] advances" were not severe or pervasive).

Because Bowen has failed to show from both an objective and subjective standpoint that the workplace environment he encountered was sufficiently severe

and pervasive, I recommend that summary judgment be granted in favor of UTMB on Bowen's hostile-work-environment claim.

## BOWEN'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Bowen has filed a Supplemental Motion for Summary Judgment in which he seeks to dispose of the eight affirmative defenses raised by UTMB in its Answer. *See* Dkt. 50. Because I have already determined that Bowen's clams for retaliation and hostile work environment under Title VII fail as a matter of law, there is no need for me to tackle the viability of UTMB's affirmative defenses. Accordingly, I recommend that Bowen's Supplemental Motion for Summary Judgment be denied as moot.

Nonetheless, I do want to briefly address UTMB's Motion to Strike Bowen's Supplemental Motion for Summary Judgment. *See* Dkt. 54. In that motion, UTMB asks me to strike Bowen's Supplemental Motion for Summary Judgment because it was filed a little more than a month after the dispositive motion deadline set forth in the Docket Control Order. UTMB is correct that the motion was filed after the March 26, 2021 dispositive motion deadline. What UTMB conveniently forgets to mention is that the Supplemental Motion for Summary Judgment seeks to get rid of eight affirmative defenses that UTMB raised for the first time in its Answer, filed on March 31, 2021—more than one year after the parties' deadline to amend their pleadings. The reason UTMB did not file an answer until March 31, 2021 is simple: UTMB's counsel flat-out forgot. *See* Dkt. 36 at 7 (describing the failure as "an inadvertent mistake due to an incredibly strenuous docket caused by emergency COVID-19 litigation"). To avoid admitting all the allegations of wrongdoing set forth in the First Amended Complaint, UTMB asked for leave to file its untimely answer. I granted UTMB's request, and now—much like the boy who killed his parents and then begged for the court's leniency because of his orphan status—UTMB takes the absurd position that Bowen should not be given the opportunity to seek dismissal of UTMB's newly alleged affirmative defenses.

That is what I call chutzpah in the first degree! UTMB's Motion to Strike Bowen's Supplemental Motion for Summary Judgment is ardently denied.

## CONCLUSION

For the reasons explained above, I recommend that: (1) the University of Texas Medical Branch at Galveston's Motion for Summary Judgment (Dkt. 34) be **GRANTED**; (2) Plaintiff Daniel R. Bowen's Motion for Summary Judgment (Dkt. 35) be **DENIED**; (3) Plaintiff Daniel R. Bowen's Supplemental Motion for Summary Judgment (Dkt. 50) be **DENIED AS MOOT**; (4) Defendant the University of Texas Medical Branch at Galveston's Motion to Strike Plaintiff Daniel R. Bowen's Supplemental Motion for Summary Judgment (Dkt. 54) be **DENIED**; and (5) The University of Texas Medical Branch at Galveston's Second Amended Motion to Strike the Exhibits Attached to Plaintiff Daniel R. Bowen's Reply in Support of His Summary Judgment Motion (Dkt. 60) be **DENIED AS MOOT**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 14th day of February 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE